And we'll next hear argument in 2 Lee v. Prestige Community Credit Union. Good morning. Rupa Singh on behalf of Plaintiffs and Appellants. My trial counsel is also here, Mr. Steve Nunez. And may I please reserve 5 minutes for rebuttal? Okay. Please watch the clock. Okay. So summary judgment in this case should be reversed for all the reasons that are set forth in the opening brief and the reply brief. But I'd like to focus today on two main errors by the district court. First, the district court misapplied the summary judgment framework and the standard in multifaceted ways that prejudiced plaintiffs as a non-moving party. Second, the district court badly misapplied the three-part governmental interest choice of law test to erroneously conclude that there was a conflict between Texas and California law and that Texas law applied. So what do I mean by the district court misapplied the summary judgment standard? The district court relied solely on the reply statement of uncontroverted facts submitted by defendants based on its adoption of the critique by defendants that plaintiffs had not genuinely opposed the material statement of facts with evidence. But that's not the case. Rule 56-3, local rule 56-3 of the Central District of California states that the district court can presume to be deemed admitted all material facts in a statement of genuine material facts unless they're controverted in an opposition statement of disputed facts or in declarations or other evidence submitted in opposition. And that's exactly what happened here. So moreover, the point of summary judgment is for a defendant to affirmatively negate an element of the claims, plaintiff's claims. Here, everybody agrees that knowledge of actual fraud was an element of plaintiff's claims. But nowhere in their genuine statement of uncontroverted fact did defendants deny knowledge of actual fraud. Rather, for example, in fact 10, they said their CEO testified that he did not have knowledge of actual fraud. But Reeves v. Superior Court says that you cannot fashion as fact something that witnesses testified to or perceived. But it was a fact that he testified as such. Right. Yeah, that was undisputed. So the district court excused defendants from meeting the burden of negating an element by allowing that undisputed fact of testimony to stand in for the fact that there was no knowledge. I'm having a hard time tracking how this argument fits into the case. Because at the end of the day, don't we still just get down to is there a genuine issue of knowledge? Absolutely. So I'd like to hear where there's a genuine issue of knowledge because that seemed to be where the district court said you fell short. Right. But I think, Judge Nelson, the district court said, I'm not even going to look at the evidence because I don't think it's here. Can you cite that then? Yeah, exactly. So it relied – it started its summary judgment order by saying I'm relying exclusively on the reply statement of genuine disputes submitted by defendants. I think my question, maybe they were following up, is fine. Okay. We've got to look at this. We can look at the whole record in a summary judgment. Okay. Where is – I mean, I didn't find it. Where is the disputed fact that there was knowledge here? I mean, it's – not to front load this, but I think part of your – the way you win potentially is that you don't have to show knowledge. But that seems to maybe only apply to the elder abuse claim, if I understand it correctly. So, I mean, first of all, you think there was knowledge. Tell me where there's knowledge. Okay. So there's a lot of disputes, and there are – there's evidence that can show – allow a jury to infer that there was knowledge. So, for example, the credit union's BSA compliance officer testified that she completed heightened due diligence based on the fact that the BSA says non-governmental entities and nonprofit churches are particularly susceptible to financial fraud. But then if you look at the record, what she actually did is incompletely fill out a one-page questionnaire, and I believe that's on ER 866. That counter – that goes against your position because that suggests she doesn't have knowledge. She might have been negligent. Well, what I'm saying is that there were – the due diligence was not conducted properly, whereas the expert says – okay, so she – But where does that show knowledge? It shows – okay, there's other things. For example, they testified that they looked at the – they being the BSA compliance officer and the CEO testified they looked at the church's website multiple times, including in 2018. And there is a prominent display in that website that advertises the church's financial investment services, right? So knowing that the church was doing something that it was – that it – Does that suggest they were aiding and abetting a Ponzi scheme? The totality of the evidence. That's just one piece of it. There's a – the expert testified that when you have, as you have here, a check system report that says do not do business with this individual, the beneficial owner of the church, you don't stop at just striking their name off the account. You do not do business with the entity of which – That's where the evidence again, right? We're looking for actual evidence that they knew there was a Ponzi scheme going on, and I didn't see any evidence of that either. So maybe you can point to something showing there was a Ponzi scheme and that Prestige knew about it. Well, for example, Your Honor, there were multiple wire transfers going out of the church's account to Whitney, the very person that was not supposed to have anything to do with the account. Each time those wire transfers went out, there was a system alert saying this person is on a list of people not to do business with, and you should do a serious investigation that this is the same person, Kent Whitney. So you fit into should have known. But what I'm saying is that's just – see, that's the third or fourth. That's should have known. Look, your problem is the law. The law says you have to have actual knowledge. You've presented a bunch of evidence about should have known. Well, to be fair – I haven't heard anything that you've said today that suggests there's actual knowledge that the bank knew there was a Ponzi scheme. So I think the totality of this circumstantial evidence could allow a jury to infer not just that it should have known, but they did. Why would you override alerts saying don't do business with this person? Why would you look at a website? For a lot of reasons other than – I mean not everybody that you can't do business with is running a Ponzi scheme. Understood, but shouldn't that be the jury's province? Shouldn't the jury be allowed to determine does that show actual knowledge or, as you say, does that show innocent reasons for not doing more? I'm not even sure it's innocent reasons. I'm giving you the benefit of the doubt. It does probably rise to the level of they should have done more. There was negligence here. There was over – there was a miss. But the law says it has to be actual knowledge. And I'm submitting that based on at least the three pieces of evidence. What's your case that suggests that the evidence that you presented that go to should have known would be enough to send this to a jury? Well, there's a lot of cases that say that circumstantial evidence alone is enough to overcome summary judgment, which is to say to send it to a jury. I'll give you an example from a Texas case, even though we haven't gotten to the choice of law analysis. On ER 17 footnote 8, this is the district court's summary judgment order. The district court talks about a case called Turk in which the Texas district court recognized that Texas has forever recognized a common law tort of knowing participation in a breach of fiduciary duty. So it's a different name than aiding and abetting, but that's a claim. As part of its analysis in the footnote, the district court acknowledges that circumstantial evidence is sufficient to establish under Texas law this analogous claim to aiding and abetting. Now, I'm not being able to cite – You're in a tough position, though, because Texas does not recognize aiding and abetting in this context, so you have to rely on California law, right? Because you're arguing California law applies. We are arguing two things. First, that there's no conflict because Texas actually does recognize – Because of this case. Because of this case, because of other cases that I'm happy to cite to the court. But that's limited to that Texas Securities Act, right? No, Your Honor. The Rothstein case, which you are talking about, did recognize in the context of the Sanford Ponzi scheme that under the Texas Securities Act you can have a claim for knowing participation. But there's no – is there a case that explicitly says Texas recognizes aiding and abetting? I think you cited saying, well, we don't necessarily preclude recognizing in the future, but that's not saying it recognizes it. So it's more of a statement that Texas recognizes it and is open to recognizing it. But it hasn't yet. Well, it has actually, to be fair. Turk v. Pershing, take a look at that case. It's discussed in the district court's footnote. The district court acknowledges the quote from that case saying Texas has long recognized a common law claim for knowing participation in the breach of a fiduciary duty. It then goes on to list the elements of that claim. And I submit to you that they are identical to a California law claim for aiding and abetting. And that case goes on to say that circumstantial knowledge is enough. Now, I'm not calling to mind California law cases that say that. But I know they're cited in their briefs. And if the court would give me a date, I would be happy to submit a supplemental letter with those citations. Circumstantial evidence is enough. I'll point to you another case, Judge Lee. It's called Jewell. And it was cited in all parties' papers. Jewell v. Arrington. And that's a Texas Supreme Court case which rejected or said we won't expressly adopt a concert of action theory. It was a weird case. It was a case about a police officer suing demonstrators that he had to remove because they were blocking access to an abortion clinic. So not the facts here. But in that case, the district court said we're not sure that we're going to do this concert of action type of claim. But the restatement 876B does say that there's a claim for knowing, participating, no, substantial aid to a wrongdoer for committing a tortious act. And the elements of that claim are identical to aiding and abetting a fiduciary duty. The court only went on to reject that theory by saying the evidence was insufficient. So the Texas Supreme Court is appearing to indicate that in the right case it would recognize such a claim. But it would, but it hasn't. Well, that was a 1996 case. There's a lot of things where courts say we might or we might not. We just don't know. We haven't. So I would commend to the court two things. Rothstein, the case about the Texas Securities Act, which, by the way, does involve Ponzi scheme. And remember, the choice of law analysis doesn't just require the district court to look at whether the law is the same or different. But as to the question and the circumstances. So Rothstein involved a Ponzi scheme. It said that under Texas Securities Act we recognize it. Then it went on to cite a bunch of cases stating that Texas has long recognized a common law claim for knowing participation in breach of fiduciary duty. The elements of which are identical. So the issue that we come up with, and Judge Nelson, you're absolutely right, the law is our problem. Because Texas just hasn't said it in the way that we would want it to. Texas just hasn't used the moniker aiding and abetting. And then the other case, Judge Lee, to your point, is Turk. Not only because it itself recognized a claim for common law participation in breach of fiduciary duty arising out of the Stanford Ponzi scheme. So, again, Ponzi scheme institution can't facilitate. But it also went on to discuss the history of how Texas came to recognize that common law claim. And so there just isn't any conflict in California and Texas law. It's just a conflict of nomenclature. And I would suggest that that's not enough to say that there's a true conflict. That California law doesn't apply. California law does apply. And with respect to the remaining- The problem with that is that only gets you, I mean, Texas doesn't recognize this. California does. But you still have all the problems with should have known versus actual knowledge. Judge, can I ask you about your elder abuse claim? Because that one, it seems to be that, like I said, you may have evidence that there's a genuine issue of disputed fact on should have known. But there is a case in California that suggests that elder abuse under the statutory section you have brought claims under, 15610.3082, does require actual knowledge. This is Dawes v. Bank of America, 2010. Are you aware of that case? And do you have any response to that case of whether California requires actual knowledge? So to be perfectly candid, I was not aware of the case. My research indicated that California only requires knowledge by the defendant of the victim's actual age in a criminal prosecution for elder abuse. And my research indicated that that's different for civil claims of elder abuse, which is what we have here. And what I would like to do with the court's permission is to look at DOS and be able to submit something if the court would like. I'll give you the citation. It's 186 Cal App 4th, 727. And the pin site to that would be 745. That might lead you in the right direction. Absolutely. Would the court permit us to submit a supplemental letter brief no more than three pages by tomorrow? Yes, that's fine. And we'll give the government a chance. I mean, we'll give the other side a chance to respond. And I was very enthusiastic in saying tomorrow, but could I have it until Friday? Yes, Friday is fine. Okay. And I'd like to reserve the rest of my time for rebuttal. All right. Thank you. We'll hear from the other side, from the bank. Good morning, Your Honors. May it please the court, my name is Howard Alperin. I belong to my co-counsel, Kevin Steinberg, for the Appellee Prestige Community Credit Union. Directing to a statement made by my adversary about evidence on looking at the website for the church that there was a graphic. There's no evidence in the record as to what this graphic was, what it means, who saw it, whether the plaintiff saw it, we never saw it. There's no evidence to the contrary of that. Prestige is a small Texas credit union with two offices in the Dallas area of Texas. All of its operations and employees are in Texas. The district court correctly analyzed the choice of law analysis using California's three-step governmental interest test. In concluding that the failure to apply Texas law in this case would significantly impair Texas interest, the district court cited the Cooper case holding California courts have frequently applied foreign laws that serve to protect businesses by limiting liability even when applying the law precludes recovery by injured California residents. And, sorry, the flip between the glasses. The district court correctly dismissed the aiding and abetting claims because Texas does not recognize them. The arguments raised on appeal that the Rothstein case and others allow for knowing participation of a breach of fiduciary duty are cases that are not on point with this case. This case was a common law aiding and abetting claim. The Rothstein case and the cases decided in Texas that allow for knowing participation require a primary wrong of the Texas Securities Act. I believe that the choice of law analysis was correct by the district court and should be affirmed by this court. The argument was that the elements of the knowing participation are the same as the elements of aiding and abetting in California. Do you disagree with that? Judge Ikuda, the elements of knowing participation require actual knowledge. Less than actual knowledge, such as constructive knowledge, are not sufficient under the Texas Securities Act. In California, the requirement under Casey is actual knowledge and substantial participation or substantial assistance. And there's no evidence of either of those elements in this case. And the appellants argue that cases like Evans and First Alliance are similar to the facts in this case. They're not. In those two cases, the banks were active participants in the business operations that ended up being sued. Prestige was simply a bank that handled deposits and withdrawals for its customer. It did not participate, it did not give loans, it did not give other services, such that you can show actual knowledge of any of the wrongdoing alleged or substantial participation or actual participation in the fraud. So it seems like we have two questions. And I think what Judge Ikuda was asking you was, look, did the district court get it wrong on the choice of law? Because as plaintiffs have pointed out, that footnote that the district court relied on doesn't actually say what the district court said it does. I'm wondering if it matters. Because even if California law applied or we were going to apply California law, the district court also did a secondary analysis and said, even if California law applied, there's no actual knowledge. So either way, I mean, there's nothing to suggest Texas, and maybe this is what you were responding, there's nothing to suggest in Texas law that that law, even if it were, even if you analogized from the Securities Act or whatever, it wouldn't be any different than California law. And they didn't state a claim or they didn't have a genuine issue of material fact sufficient to go forward to defeat summary judgment. That's correct. OK. Are you familiar with the case that Judge Nelson referenced, Doss v. Bank of America? I can honestly say I have read Doss in a prior case, but it's not at the forefront of my mind. OK. And again, if the appellants are going to have an opportunity to submit a brief, we would like one as well. Yes. And if you can also have a deadline of Friday, so simultaneous briefing. Thanks. Can you help me out with what did the district court do on the elder abuse claim? Did the district court say that there was no evidence? Did it assume a should-have-known standard and said there was no evidence, no genuine issue of material fact even as to should-have-known standard? Yes, Your Honor. Judge Nelson, the court went through the analysis of the prestigious involvement with the Shared Branch Network and that it did not have knowledge of the actual transactions, and it concluded that summary judgment on the claim was warranted because the facts read in the light most favorable to the plaintiff failed to lead a reasonable person to believe that Prestige should have known about the church's alleged Ponzi scheme and its harm to elders. Do you agree with that? I mean, obviously, you do. You won on it. But, I mean, it seems like they – I think in fairness, summary judgment, there's some suggestion that they should have known. There were – I mean, you don't disagree that there was at least a genuine issue of material fact as to red flags and warning signs that something should have been looked at. Well, Judge Nelson, I don't agree with that because the – certainly the California case of Casey specifically says that red flags and such are not signs of actual knowledge. No, I'm giving you that. They're not signs of actual knowledge. But if we apply a should-have-known standard, I mean, that's a tougher issue, I think, for your client. Again, I would respectfully say that it's not. What's your case on the should-have-known? Casey talks about the speed of banking transactions and how looking at them, monitoring accounts and things like that are not things that a bank does. A bank has no duty to non-customers. And again, as I talked about the Evans and the First Alliance case, this is not a case where Prestige was funneling loans or propping a company up. But if I may interrupt, this isn't just about transactions. The bank actually took affirmative steps to kind of look a little further into it. They went to the website. They went to look at the property on whatever it was, Google Maps. So it wasn't just some transactions going through the wires and they didn't look at it. They were actually on notice of maybe not knowledge of a Ponzi scheme, but maybe something a little bit awry was happening here. And Judge Lee, there's no evidence in the record that at the time that they did that, that they looked at the website. And there's no evidence that when they looked at the website that it would have made any difference in this case. The discussion is that that occurred in late 2018 or in 2018, and the SEC came in in the early part of 2019. So I don't think that goes to show that they had actual or some type of knowledge that there was anything wrong. I think most of us, I think, think the actual knowledge may be not actual knowledge here, but it should have possibly, definitely, I think. And how do you draw the line? Where do we draw the line where it becomes should have to maybe they did have actual knowledge, and when does that become an issue for the jury? Because your friend on the other side is saying there's so many red flags here. It's not just should have, but at least should have given to the jury to figure out whether it was actual knowledge. Again, I go back to the Evans and the First Alliance case where they talk about how the bank had an interest in loans for the customers of the bank. And they were supposed to receive proceeds of those loans into a lockbox that the bank actually monitored. And over time, there was no actual money coming into the lockbox from operations of the bank, such as the bank had knowledge or even reasonable suspicion. If there's no money coming in, there's no legitimate business enterprise going on. And that's the standard that the cases talk about. Do you disagree with the red flags that were identified by opposing party? Yes, Your Honor, I do, because they don't rise to the level of actual knowledge. And again, Casey talks to it, the Chase and Case, and there's a Gill case that all talk to there's no duty to non-customers. And with the speed of banking transactions in this country, you cannot look at individual deposits and withdrawals going through a regular depository account. So you keep saying there's no duty to determine actual knowledge. And maybe you're just saying as a legal matter, even the should-have-known standard can't apply to a bank here because, I mean, under that theory, they don't have a duty to investigate any of these things. I mean, under your theory, even if the church came in and said, hey, we're really glad that we can use your bank. We love the friendly atmosphere, and it helps us because we're doing some shady stuff here and we're ripping these people off. You would say, tough luck. We don't have a duty to investigate what they're doing to other people. I mean, I want to give you a chance to flesh that out. Sure, and Judge Nelson, if they had knowledge that they're doing shady things, they do have an obligation, but not to non-customers. Well, right, but, I mean, that theory suggests that even if they came in and said we're ripping these people off, you would say, well, I don't have a duty to these people because they're not our customers. I think you've overstated your position. Maybe I'm wrong. Maybe you are right. If you're right, then the debate about should have known and knowledge doesn't matter, but that was not my impression, at least as I dug into the elder abuse claim. I mean, you've been making a statement that the bank has no duty to a third party. That may be – I could see a rationale where that goes, but I just don't know that that carries the day. They do have a duty to a third party. If they have actual knowledge that that third party is getting ripped off by one of their customers and their bank is being used to do that, you would say they do have a duty to a third party. Correct. I agree. Okay. And if the panel has any further questions? No, apparently not. Thank you. Thank you. Okay, you have some time for rebuttal. Yes, thank you so much, Your Honors. I don't want to look a gift horse in the mouth, so I will submit that brief, but it turns out that DAS interpreted a prior version of the elder abuse statute. And there's a footnote in DAS that particularly says we're not construing the new statute. This is still the old statute, but we'd be happy to submit that brief. And if you look at it, if you can explain, are there actual material differences between, I think, pre-2008 and the current one, if you can focus on that. Absolutely. We'll do judgely. And not just rely on the language. I'm aware of that language and the DAS opinion, but actually look at the text of the two statutes. Right. Great. And then I did want to address this actual knowledge issue, and my time is short, so what I would say is I would point the Court to our reply brief. In pages 24 and 25, we talk about how plaintiffs presented evidence for a jury to infer that Prestige eventually learned that instead of collecting membership dues, what the church was doing was getting money to invest for its clients. And there was a lot of evidence of this, and Mr. King testified to it. So the point being a Ponzi scheme is not one fraud, right? The fraud is you purport to be selling something or making something, but instead what you're doing is you're getting money from innocent people and paying off prior people that you promised it to. So the first step of knowledge. Sorry? What was the evidence of a Ponzi scheme of using investment monies to pay off prior investors? First, there was sufficient evidence to show that the money that was coming in was not membership dues. The balance increased from $111,000 in January of 2018 to $3 million in September of 2018. So how does that show they were using the incoming funds to pay off prior investors? The first piece of it is that everybody acknowledged that this was a suspicious, worrying increase in balance. It didn't necessarily show that they were using the money to pay off prior investors, but it showed that this was not membership dues. I guess the fact that it's not membership dues does not show that it's a Ponzi scheme. It shows that the money was being used for something else, but it doesn't show it's being used to pay off investors, especially that sort of increase. This was not the Ponzi scheme where it was paying off investors. It was actually just, you know, funding Mr. King's lifestyle. But what I'm saying is there was sufficient evidence. Was there evidence that it was funding Mr. King's lifestyle? Yes, there were a number of deposit or wire transfers from the church account to Mr. King in amounts above $5,000, which the bank's own policy, the credit union's own policy requires it to investigate. Furthermore, each of those transactions led to an alert saying there's a Kent Whitney that is not supposed to be doing financial business in the United States. Can you please investigate? And the bank overrode those alerts. So it had knowledge that checks were coming in with the memo line saying from client, you know, not dues from members, in amounts $5,000, sometimes $10,000, which generated cash reports that you can't deposit $10,000 in cash without some kind of investigation. So there was that evidence. And then there was evidence that there was money going out to Mr. Whitney, the very person that they struck from the account, and they were being alerted to investigate. And all of those transfers are going to PayPal accounts. And some of those transfers said to pay for personal items, for girlfriends' dress, for student loans, and for things of that nature. So if you look particularly at the evidence that's cited in the reply brief on pages 24, 25, I believe that we have submitted at least enough evidence to show that a jury could infer that there was actual knowledge. Now, remember, summary judgment, extraordinary, drastic, not to be granted without caution, particularly where knowledge, intent, or motive are at issue. And so I think if you look at that in that context, the district court may have been a little too hurried in its analysis and also undermining the witness's credibility could lead a jury to infer that when they deny actual knowledge, they're not actually being able to – they're not believable. So when the CEO says, I looked at Google Maps and I saw this warehouse, but we can show that the Google Maps should actually show this, why couldn't a jury sit there and infer when he says, I didn't have actual knowledge? If he's wrong about this, he's wrong about that. Credibility determinations are the jury's province. Sorry, Judge Akuda, did you want to – You're running out of time, so please. Okay. I think I just wanted to mention the Evans case and just note that it's not a matter – it may be that a bank does not have a duty. Evans was a pleading case. It's an unpublished Ninth Circuit case, but it did say it doesn't matter whether the bank had a duty or not. It matters what the bank did. And in this case, the bank acknowledged that there were red flags and it looked into it. All right.  And so we would submit that the court should reverse. I think we have your arguments. Thank you for your time. And I thank both sides for their arguments, and the court for this session is adjourned. Thank you. All rise.
judges: IKUTA, NELSON, LEE